**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK TEPPER, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-387 |
| | : | |
| BARRY SMITH *et al.*, | : | |
| | : | |
| Respondents. | : | |

**<u>MEMORANDUM OPINION</u>**

**SCHMEHL, J. /s/ <u>JLS</u>**                                                    **January 25, 2024**

        In February 2012, a jury found Petitioner Frank Tepper guilty of first-degree murder and other lesser charges.  The state court sentenced Mr. Tepper to life imprisonment, as well as shorter concurrent terms for the remaining charges.  Following the conclusion of post-conviction state court proceedings, Mr. Tepper filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  U.S. Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation, *see Tepper v. Smith*, 2022 WL 20286557 (E.D. Pa. Nov. 30, 2022), in which she rejected all of Mr. Tepper's claims but one:  whether his trial counsel rendered him ineffective assistance by failing to call two witnesses who may have contributed to Mr. Tepper's claim of self-defense.  For the following reasons, this Court respectfully disagrees with Judge Wells on this point and finds that all of Mr. Tepper's claims lack merit.

**I.      BACKGROUND**

        The Pennsylvania Superior Court summarized the facts supporting Mr. Tepper's conviction as follows:

>         On November 21, 2009, [Tepper] was hosting a family function at his house in Port Richmond.  That same day, the victim, William

Panas, and some of his friends were socializing outside a nearby building. Around 10:30 p.m., a fight erupted between the victim, the victim's friends, and various people attending [Tepper's] family function. [Tepper], an off-duty Philadelphia police officer, went outside with a firearm and attempted to disperse the crowd. The Commonwealth's witnesses testified [Tepper] pointed his gun at them and said, "Back the fuck up." [Tepper] then pointed the gun at the victim, who stated in response, "What are you fucking going to shoot me?" One witness testified that the victim said, "[Tepper] is not going to shoot anyone." [Tepper] responded by shooting and killing the victim. Forensic evidence showed the victim's clothing had no traces of lead residue, which indicated [Tepper's] gun was at least three feet away from the victim's body when [Tepper] fired his weapon.

On February 23, 2012, following a five-day trial, a jury found [Tepper] guilty of first-degree murder, [possession of an instrument of crime, and recklessly endangering another person]. On April 4, 2012, the court sentenced [Tepper] to life imprisonment for the first-degree murder conviction, plus a concurrent term of one (1) to two (2) years' imprisonment for each of the lesser convictions. [Tepper] timely filed a post-sentence motion on April 9, 2012. On May 7, 2012, the court denied the post-sentence motion.

*Commonwealth v. Tepper*, 2020 WL 1656149, at *1 (Pa. Super. Ct. Apr. 3, 2020).[1]

Mr. Tepper subsequently pursued post-conviction relief. The Pennsylvania Superior Court rejected his challenges to the sufficiency and weight of the evidence; a Post Conviction Relief Act ("PCRA") court dismissed Mr. Tepper's PCRA petition; the Pennsylvania Superior Court rejected Mr. Tepper's appeal from the PCRA court's decision; and the Pennsylvania Supreme Court denied *allocatur*. *See Tepper*, 2022 WL 20286557, at *1 (summarizing post-conviction proceedings). Mr. Tepper then filed the present petition.

---

[1]     Troublingly, Respondents underscore that this incident was but one of many similar alleged violent conflicts involving Mr. Tepper. (*See* Obj. Mag. J. R. & R. at 6 n.3, ECF No. 38 (noting that in a civil action related to the present incident, the plaintiffs alleged that "(1) Tepper drunkenly 'pistol-whip[ped]' a man for making comments to his fiancé [*sic*], (2) Tepper pointed a gun at a 10-year-old boy for waking him up by bouncing a ball outside Tepper's house, and (3) Tepper pepper sprayed some teens and said, 'yeah, I'll shoot you, I'll shoot all of you, I don't care'" (citing *Panas v. City of Philadelphia*, 871 F. Supp. 2d 370, 372–74 (E.D. Pa. 2012)))).

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 2254(a), as Mr. Tepper is "a person in custody pursuant to the judgment of a State court" who claims that "he is in custody in violation of the Constitution or laws or treaties of the United States."  As to claims adjudicated on the merits in state court proceedings, the Antiterrorism and Effective Death Penalty Act of 1996 precludes this Court from granting habeas relief unless the adjudication of such claims either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Because Mr. Tepper and Respondents have filed objections to Judge Wells's Report and Recommendation, the Court reviews her findings *de novo*.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## III.    ANALYSIS

Mr. Tepper's petition claims that his trial and sentence violated his constitutional rights and that his trial counsel was ineffective for failing to perform certain tasks.  *Tepper*, 2022 WL 20286557, at *2–3 (summarizing claims).  Of Mr. Tepper's 24 claims, Judge Wells found that 19 were procedurally defaulted.  *Id.* at *4.  Of the five remaining claims, Judge Wells found that four were reasonably rejected by the state courts.  *Id.* at *5–9.  This Court agrees with her reasoning and adopts these portions of the Report and Recommendation in full.

As to the last remaining claim, however, Judge Wells found that Mr. Tepper's trial attorney indeed rendered ineffective assistance that prejudiced the outcome of Mr. Tepper's trial; accordingly, she recommended that the Court grant Mr. Tepper habeas relief.  Under U.S. Supreme Court precedent, a claim of ineffective assistance of counsel has two elements:  first, that "counsel's representation fell below an objective standard of reasonableness"; and second, that

such deficient representation "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687–89 (1984).

The Pennsylvania Superior Court upheld the PCRA court's rejection of Mr. Tepper's *Strickland* claim on the grounds that (1) the testimony of the two potential witnesses, Crystal and Alicia Chambers, would have been cumulative, and (2) Mr. Tepper had failed to establish that these witnesses were available and willing to testify. *Tepper*, 2020 WL 1656149, at *3–4. Before Judge Wells, Respondents conceded that the first basis represented "an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2)," and that the second basis "is contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)." (Resp'ts' Resp. to Pet. at 14, ECF No. 20.) Respondents argued, however, that rejection of the *Strickland* claim was nonetheless consistent with federal law because Mr. Tepper could not establish the requisite prejudice. (*Id.* at 15–17.)

Judge Wells analyzed the first *Strickland* element, deficient performance, as follows:

> There is no dispute that, during his opening statement, trial counsel told the jury they would hear evidence [from Crystal and Alicia Chambers] that the victim was reaching toward his waist, prior to being shot by Petitioner. There is also no dispute that, in his closing argument, trial counsel admitted that the evidence had not been presented and he apologized for not doing so; he suggested the reason for the omission was that he did not realize the Commonwealth would not call all of its witnesses and he did not want to call the victim's friends. Trial counsel's explanation for the evidentiary omission was inaccurate, because the witnesses who could have provided the missing evidence were Petitioner's nieces, not the victim's friends. The missing evidence would have been helpful, since it supported the proposition that Petitioner shot the victim out of fear, not with malice and intent to kill. That is the reason counsel mentioned it in his opening and apologized for its omission during his closing. Furthermore, the omitted evidence would have come from Petitioner's nieces, Crystal and Alicia Chambers, who were not hostile to the defense. Under these circumstances, there was no conceivable strategic reason for trial counsel's failure to have called these favorable witnesses. Indeed, counsel's apology and misstatement of the reason for the evidentiary

> omission in his closing argument, demonstrates that the omission was not the result of his trial strategy. Therefore, counsel's performance was deficient.

*Tepper*, 2022 WL 20286557, at *9 (citations omitted).

Respondents argue that although trial counsel incorrectly stated that Crystal and Alicia Chambers were friends of the victim (when in fact they are related to Mr. Tepper), trial counsel may nonetheless have had an unstated ulterior motive in declining to call these witnesses. Respondents speculate that perhaps Crystal and Alicia Chambers "had suddenly turned hostile to the defense, or their stories had changed in material ways, or they no longer provided credible-sounding accounts . . . ." (Resp'ts' Obj. to Mag. J. R. & R. at 10.)  Accordingly, Respondents argue, "it cannot be presumed that [trial counsel's] explanation to the jury for the witnesses' absence was the real reason he did not call them." (*Id.*)  Although this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and must presume "that, under the circumstances, the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689, Respondents' position is a bridge too far.  Nothing in the record suggests that the Court should infer anything from trial counsel's statement other than that trial counsel erroneously believed that Crystal and Alicia Chambers were sympathetic to the victim rather than Mr. Tepper.  Nor have Respondents cited to a case in which a court concluded, without any supporting evidence, that trial counsel's erroneous statement to the jury was, in fact, a strategic lie—and therefore sound trial strategy—that trial counsel offered to conceal a weakness in a defendant's case.  Accordingly, this Court agrees with Judge Wells's analysis and adopts her finding that, in satisfaction of the first *Strickland* element, trial counsel's representation fell below an objective standard of reasonableness.

This Court respectfully departs from Judge Wells's analysis, however, as to the second *Strickland* element:  whether trial counsel's deficient representation prejudiced Mr. Tepper by

depriving him of a fair trial. A petitioner establishes prejudice if he shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" translates to less than a preponderance of the evidence; instead, it is "a probability sufficient to undermine confidence in the outcome." *Id.* at 693–94.

Judge Wells reasoned that "if counsel had presented testimony from Crystal and Alicia Chambers, there is a reasonable probability of a different outcome, because the jury would have been left with a concrete basis to believe Petitioner's version of the events; that is, there is a reasonable probability that the jury would have believed Petitioner feared the victim was armed and attempting to draw his weapon, and shot the victim in self-defense, not with malice and the specific intent to kill." *Tepper*, 2022 WL 20286557, at *10. Respondents agree that Alicia Chambers's testimony "arguably could go to Tepper's mental state," as she had previously given a statement that "indicated that the victim grabbed at his waist just before being shot." (Resp'ts' Obj. to Mag. J. R. & R. at 12.)[2]

Respondents argue, however, that to establish self-defense under Pennsylvania law, "(1) the actor must reasonably believe that he is in imminent danger of death or serious bodily harm, and that it is necessary to use deadly force against the victim to prevent such harm, (2) the actor must be free from fault in provoking or continuing the difficulty which culminated in the slaying, and (3) the actor must not violate a duty to retreat." (*Id.* at 12–13 (quoting *Commonwealth*

---

2       Respondents note that Crystal Chambers would have offered testimony much less helpful to Mr. Tepper: "She did not see the shooting and could only testify that she saw a young man that she did not identify as the victim with his hands on his stomach as he ran toward her uncle's house. Her statement does not indicate that her uncle witnessed this." (*Id.* at 11–12.)

*v. White*, 424 A.2d 1296, 1297 (1981)).)³  Of these three elements, testimony from Crystal and Alicia Chambers could have, at most, satisfied only the first—leaving Mr. Tepper's self-defense claim fatally defective.  The Commonwealth established that Mr. Tepper returned to the fight and "escalat[ed] the confrontation with a deadly weapon," thereby provoking the slaying and "violat[ing] his duty to retreat," in contravention of the second and third elements, respectively. (*Id.* at 14–15.)  Testimony from Crystal and Alicia Chambers would not have addressed the deficiencies in these two elements.  Given that Mr. Tepper's self-defense claim was inescapably defective, the Court cannot find a reasonable probability that, had trial counsel called Crystal and Alicia Chambers to testify, the result of the proceeding would have been different.  This conclusion is especially clear when considering Respondents' additional point that testimony from Crystal and Alicia Chambers may not have even convinced a jury that the *first* element was satisfied, as five other witnesses "testified that the shooting was precipitated by words exchanged between Tepper and the victim, not the victim grabbing at his waist." (*Id.* at 17.)

In addressing the prejudice prong of his *Strickland* claim, Mr. Tepper argues that the Court should assess his use of deadly force "under the Fourth Amendment's objectionl [*sic*] reasonableness standard pursuant to 18 Pa. C.S.§ 508 and by the decision and Law of the Land as set forth by the U.S. Supreme Court . . . ." (Pet'r's Resp. at 6, ECF No. 40.)  Mr. Tepper cites various excessive force cases, some of which involved a police officer shooting an individual reaching for his waistband.  This theory confuses the issues.  The question here is whether trial counsel's failure to call Crystal and Alicia Chambers prejudiced the claim of self-defense that Mr.

---

³       As Respondents point out, even in cases of imperfect self-defense, a defendant must still satisfy all three elements; the only difference is that as to the first element, the defendant *unreasonably* believed that deadly force was required. (*Id.* at 13 (citing *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. Ct. 2012)).)

Tepper actually presented at trial—not whether such testimony would have spoken to a different defense (such as that offered by section 508) or a different standard not applicable here (such as excessive force under the Fourth Amendment).  Mr. Tepper effectively asks this Court to re-try his case under a section 508 defense that was not raised at trial and has since been rejected as a basis for habeas relief.[4]  Likewise, the fact that certain courts have rejected section 1983 claims by finding that officers do not use excessive force when they shoot at individuals reaching for their waistband does not bear on Mr. Tepper's criminal liability or whether he satisfied the three elements of self-defense outlined above.  Accordingly, because Mr. Tepper did not establish prejudice, the rejection of his *Strickland* claim was not contrary to (nor an unreasonable application of) federal law and was not an unreasonable determination of the facts in light of the evidence presented below.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Mr. Tepper's petition for habeas relief. Because reasonable jurists would not debate this Court's procedural and substantive disposition of these claims, a certificate of appealability shall not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A corresponding order accompanies this memorandum.

---

[4]     Elsewhere in his petition, Mr. Tepper argued that trial counsel was ineffective for failing to assert a defense under section 508, which authorizes the use of force in certain law enforcement contexts.  Judge Wells, however, found that the state court reasonably rejected this claim in light of "evidence that Petitioner was the aggressor and did not reasonably believe he was in imminent danger of death or seriously bodily injury." *Tepper*, 2022 WL 20286557, at *8.  Judge Wells also noted that the claim is likely procedurally defaulted due to its failure to be properly preserved in the PCRA court. *Id.* at *8 n.10.  As indicated above, this Court has adopted Judge Wells's finding as to this claim.